Thank you, Your Honor. May it please the Court, I'm Theodore J. Boutrous, Jr., representing the appellants. I would like to reserve five minutes for rebuttal. This Court should reverse the district court's judgment vacating the arbitrator's award in this breach-of-contract dispute. In overturning the arbitrator's award, the district court applied what effectively amounts to a de novo standard of review, which is a far cry from what this Court called in its en banc kiosera decision the extremely limited review authority. The question was, is this manifest disregard, right? That's correct, Your Honor. You know, this really shouldn't take 20 minutes to argue. It either is or isn't manifest disregard. I tend to agree, Your Honor. I think that it was not manifest disregard. The district court, excuse me, the arbitrator, announced the Nevada law principles that apply on page 141 of the excerpts of record in the arbitrator's order. He noted that when there are ambiguities in a contract, parole evidence can be considered. He then ruled that there were ambiguities, considered parole evidence, and found that there had been a breach of the implied covenant of good faith and fair dealing. So the arbitrator did not manifestly disregard the law. The arbitrator applied the law. The law of implied covenant of good faith and fair dealing is very broad and amorphous and provides significant authority for the arbitrator to determine the intent of the parties, the circumstances surrounding the agreement, quite apart from the expressed terms of the agreement. The arbitrator applied that law. And even if he was incorrect, that is beyond the scope of the review authority, and the district court erred by second-guessing those judgments about the application of the law. So for those reasons, we believe that the district court's judgment should be vacated and the arbitration award reinstated. Thank you. Thank you. May it please the Court, John Bailey appearing on behalf of Raley's. May I suggest to the Court that if there was ever a case where the standard of review mandated that an arbitrator's decision be vacated, it's this case. The arbitrator consciously ignored the written agreement between the parties. He created an entirely new agreement, one to reach his desired subjective intent and notions of fairness. In doing so, his interpretation of the agreement is not plausible and his decision is completely irrational as he demonstrated his manifest disregard for the law. The issue before the arbitrator, as all the parties agreed, was one of whether or not the arbitrator should be compensated for the three-month period of time that Raley's announced that it was closing its stores. The customer volume decrease from one period of time, September of 2002 to November of 2002, a three-month period of time. That's what United asked for. They wanted compensation from the period of time that Raley's announced that it was closing its stores to the time that it actually closed its stores. United also asked the arbitrator to reform the agreement out of fairness. That was its words, out of fairness, so that it could pay less money for the stores that remained open. What's very telling is that at the end of the arbitration hearing, the arbitrator said these words, and I quote, My gut reaction is that fairness indicates some relief for United Coin, but that fairness may not be allowed in the contract, so that's kind of my preliminary thoughts, and I would like to have a brief on the legal issues, end quote. He then asked the parties to brief the issue of whether or not he could reform the agreement based on the frustration of purposes doctrine. We brief that issue, and he sets forth his decision. In his decision, he says, Reformation is inappropriate. He's correct. Reformation is not appropriate. The frustration of purposes doctrine does not apply in this contractual sense. He also says, It is not within the power of the arbitrator to create a new agreement which is inconsistent with the clear intent of the parties. Again, he's correct. He's acknowledging that he understands that reformation of the contract is not what he can do as an arbitrator. What does he do? He has a subjective notion that fairness requires that United get something. He told us that. So what he does is he creates an ambiguity in a section of the contract that the parties themselves agree as to what that section means. Of course, that section of the contract is wholly irrelevant to the dispute before the arbitrator. The dispute before the arbitrator is section 3D of the contract, which says, very simply, Raley's has the right to close any of its stores. The arbitrator did not find any ambiguity with section 3D, or the parallel section 15, which says essentially the same thing. He goes to a provision in the contract that's irrelevant and says, I'm going to find an ambiguity in this provision. Of course, we've cited the fact that that provision was superseded by a different provision. What's important for the manifest disregard of the law standard is that he recognizes, excerpt of record, page 140, that the ambiguities which allow parole evidence. He understands that he cannot allow parole evidence or extrinsic evidence unless he finds some kind of ambiguity. It is this finding of an ambiguity that allows him to then allow extrinsic evidence so that he can get to the point of saying, I'm going to rewrite the contract, even though I know I can't. I've expressed that I can't rewrite the contract, but I'm going to allow parole evidence through this ambiguity, the ambiguity in this unrelated section. And by doing that, I'm going to then reach the covenant of good faith and fair dealing to take away an expressed right that Raley's has. Alito, why isn't that covered by the standard of review that says that we're not permitted to vacate an award if the arbitrator made an error of law in failing to properly understand or apply it to the facts before him? And that's an excellent question. I'll tell you why. It's because it's not – this is not a situation where he just misunderstands or doesn't apply an area of law. This is a situation where he recognizes what the law is. He recognizes the law of parole evidence. He recognizes the law with respect to reformation of an agreement. And then he says, though I recognize the law, I'm going to ignore it. I'm going to do something different. But what does he say, I'm going to ignore the law? Well, that's what his decision is. He rewrites the contract. He rewrites the contract to allow United relief based on future rent payments when he says in his own decision, I cannot reform the contract. The fact that future rent payments was not even an issue before the Court, and his response at the end of the arbitration hearing about his gut reaction supplies the basis for why, he's recognizing what the law is, and he says, I'm not going to do what I recognize to be is an application of the law. I'm going to do something different. I can understand that you take umbrage at his gut reaction comment, but the very next thing he does is to say to the parties, I need legal briefing on this. And you give it to him. And he looks at the authorities, and then he makes a ruling. And I'm having a hard time understanding why that action doesn't come within our case law that says even if he applied the law incorrectly, that does not constitute manifest disregard. There's a difference, respectfully, between applying a law incorrectly and disregarding the law. He did ask for briefs. He wanted to know whether he could reform the contract based on the frustration of purposes document. You read in his decision, he doesn't discuss the frustration of purposes document doctrine. In fact, he goes further and says, I can't reform the agreement. Reformation is inapplicable, he says. And he's right. He is absolutely right. He's recognizing that he can't reform the agreement. He then goes forward and does exactly what he says he cannot do. That is disregarding the law. That is a manifest disregard of the law. And that's why we move to vacate the arbitrator's decision. That's why you see Judge Mahan's decision and you read the transcript where he's ‑‑ Judge Mahan is trying to say how do you get to the point of understanding that the parole evidence rule forbids the introduction of extrinsic evidence that contradict the expressed terms of the law, and yet when I ask you is this provision ambiguous, the provision which is the subject matter of the lawsuit, everybody agrees it's not ambiguous. So how do you get to the point of allowing this extrinsic evidence? What Nevada case law says that there must be ambiguity in the contract before you can consider parole evidence? The parole evidence rule is a matter of the contract. My question is what Nevada case says that rule that the arbitrator specifically disregarded? The Holland case. The Holland case. Holland v. Crummer. Okay. With that, it was clear to us ‑‑ Has the Nevada Supreme Court addressed this issue in the context of a breach of the implied covenant of good faith and fair dealing? The parole evidence rule? Yes. Not to my knowledge. The only cases that the parties have cited are the Hilton Lewis case and the J.A. Lewis case. But not to my knowledge in terms of ambiguities in the breach of covenant of good faith and ‑‑ And how do you agree with Hilton Hotels v. Butch Lewis Pool? I read that case to suggest that you can have a breach of the covenant of good faith and fair dealing when a party literally complies with a contract, but then takes some action which undermines or contravenes the spirit of the contract. That's how I read that case. Is the parole evidence admissible for that purpose, to determine what the spirit and intent of the contract was? Well, I think you have to find an ambiguity in the contract before you can go to parole evidence to try to determine from some extraneous ‑‑ In that context, though, does Hilton Hotels say that you have to find an ambiguity when you're dealing with a breach of the implied covenant of good faith and fair dealing? My review of the Hilton Hotels case does not address that point directly. But that's how I read the Hilton case. Our case is completely different. Why? Because the arbitrator uses the breach of the covenant of good faith and fair dealing concept to rewrite the contract itself, a contract which Raley's had an express right to engage in certain conduct. Raley's had the express right to exercise a right to close any of its doors. Do you think the arbitrator recognized the doctrine of the breach of implied covenant of good faith and fair dealing under Nevada law? I think he ‑‑ of course he did. He talks about it in his ‑‑ Do you think he might have applied it erroneously here? I do not think he applied it erroneously. I think he understood what he was doing, and I think he used the breach of covenant of good faith and fair dealing as a guise to get to the result that he wanted. I don't understand why that's a manifest disregard of Nevada law, then. Because arbitrators are not allowed to invoke their sense of what justice may be irrespective of the express conditions of the contract. That's what this arbitrator did. Mr. Bailey, I don't read Hilton Hotels as narrowly as you do. I mean, it essentially recognizes that even in cases where the party, in this case Raley's, strictly adhered to the provisions of the contract, that nonetheless there might be a breach of the implied covenant of good faith and fair dealing. And then they drop footnote 6 at page 924 of 808 Pacific 2nd that talks about the illustration where you have a net-net lease, and the lessee basically acts in such a way that it minimizes the amount of sales at the location so that it reduces the rent. Here it seems to me there's a direct analogy between closing all the stores in southern Nevada, which essentially forecloses United Coin from making any money off of its slot machines in those stores, and it seems to me to be a directly analogous illustration of a breach of the implied covenant of good faith and fair dealing. So to repeat Judge Piazza's question, how is that a manifest disregard of Nevada law? Let me explain to you why that footnote 6 in Lewis-Hilton is different than this case. In footnote 6 it talks about a lessor and a lessee having a percentage rent agreement. And the hypothetical that the Court gives us is that the lessee then diverts his business to a different set of businesses that it's owned, that it owns, in order to affect the amount of percentage rent that it has to pay to the lessor. And why can't we simply say the closure of 19 stores in southern Nevada diverted all of Raleigh's grocery business to the remaining northern Nevada stores, which are the only ones left open? The difference is that there's a difference between complying with the express terms of a contract and exercising your right under the express terms of a contract. And another one of the things that the parties can expressly abide by the provision of the contract but still be in breach of the implied covenant of good faith and fair dealing if they act in such a way that it essentially undermines the spirit of the contract. And I don't disagree with that. But when you have a contract such as our contract where one party in a bargain-for condition has the express right to exercise the right to close any of its stores, that's very different than complying with the terms of a contract whereby you are Raleigh's I don't think there's any doubt it's different. The question is, when you don't you have a contract that says you can close stores. You're thinking of individual stores. Suppose you closed all stores but one in the entire State. Now, let's say instead you closed half the stores in the southern part. Maybe the arbitrator is wrong in saying that same principle should apply even though it's not deliberate. But if it has the effect on the contract that nobody contemplated at the point, but that doing that really, you know, violates the spirit of the contract. And he believes that that's covered by the good faith and fair dealing case incorrectly. I mean, why is that a manifest disregard rather than just an erroneous view of the law? Because when you look at what the arbitrator did, he backed into the result that he wanted that was contrary. He took a right away from Raleigh's that was expressed in the contract, and that is the right to close any of its stores. Well, no, you can still close the stores. You just have to adjust the rent of United. But that's not what the agreement says. He acknowledges that's not what the agreement says. Yeah. Well, Chris, that's when you go beyond the specific literal terms of the agreement. I'm sorry? That's when you go beyond the specific literal terms of the agreement. If it were just a straight interpretation of the language of the agreement, there would be no question at all. But Hilton deals with, as Judge Tallman says, the case where it's not covered by the literal terms of the agreement. And that's my – that's exactly my point. The express terms of the agreement does contemplate the closure of stores. That is exactly my point. Paragraph 3. Even where in Hilton they complied with the express literal terms of the agreement, just as in this case. Difference, though. If you would have had in Hilton a situation where the boxer, Leon or Michael Spinks, actually had – I'm sorry? Either one. Either one. I'm sure they'd disagree with that, but either one. If you had – if you had an express provision in that contract for that unification bout that Michael Spinks had to participate in the contest and then he doesn't do so because of some other reason, you have a breach of the covenant of good faith and fair dealing. The difference is in our contract, we have an express provision. We have an express right. The arbitrator takes away our express right by trying to rewrite the agreement under the guise of the covenant of good faith and fair dealing. The same thing happened – the measure of damages in Hilton Hotels, using the illustration in footnote 6, would have to be based upon a payment of a higher rental rate than what the lessee was actually obligated to pay under the express terms of the contract based upon his breach of the covenant of good faith and fair dealing by diverting business. Why doesn't the mirror image apply in this situation? The measure of damages is the difference between the higher rental rate for the northern Nevada stores and what those stores should actually have been leased out at if there were no stores in southern Nevada. Because the contract says that the rental rates were determined based on each particular store location. They were not determined as a whole. The contract rate in Hilton Hotels said that the lease was based upon net-net. So if the measure of damages was limited to actual sales, then you would recover nothing for breach of the implied covenant of good faith, because under the literal terms of the contract, all you get is a net of whatever the sales are. You have a different situation here. It is. You don't have to convince me that it is. You don't have a situation here that is analogous to footnote 6 because you have an express right to do something in our situation, which is to close stores. And collect higher rent from stores in northern Nevada that are now worth less to United States. So you're not collecting any rent from the stores that were closed. You're not collecting any rent from the stores that were closed. In other words, we close stores. They don't pay us any additional. They don't pay us rent when the stores are closed. But would that be different in Hilton Hotels if the sales had dropped to zero and the lessee said, I don't have to pay you a dime to lease this store because I'm not making any sales at it? Well, let me bet. There would still be a measure of damages. Would there not? There would be a measure of damages, but the difference here is that you have a bargain for situation where the contract itself was extended for an additional period of time based on the renegotiation from the 1993 agreement. So if your point is, and let me just answer your point directly. If your point is, well, Raley's is obtaining the benefit of additional rent in the northern Nevada stores, the stores that were not closed, then United is getting the benefit of an extended lease term, which is what the parties agreed to while they modified or amended the 1993 agreement in 1999. The benefit was more than an extended lease term. It was an extended lease term which included more profitable stores in southern Nevada, which generated higher revenues per machine. And so by your closing of those stores, you deprived United Coin of any revenues from the machines in southern Nevada. And implicit in the breaching the covenant of good faith and fair dealing is you have to not engage in that process in good faith. Once you find that the breach has occurred, then aren't we really quibbling over how damages are measured or computed as a remedy for the breach? Two points. First of all, no party asserted, suggested, made a claim for breach of the covenant of good faith and fair dealing. This is a creature of the arbitrator after the fact. Okay? A creature of Nevada law. And the arbitrator asked for briefing on, you know, how can I do some rough justice here? But the arbitrator did not ask for briefing on the covenant of good faith and fair dealing. That's not what he asked for. He backed into that when he decided to disregard what the express language of the contract says. Incorporate Nevada law. I'm sorry? The contract. Absolutely. And I'm not saying that the covenant of good faith and fair dealing isn't implicit in every contract. And I agree with that. But the only testimony, the only testimony in this record as to what kind of relationship occurred after Raley closed its doors was the testimony of Uninet's principal, who negotiated the contract, who said, yes, Raley's engaged in good faith negotiations. We just simply couldn't come to an agreement. So you can't breach, and this is all before the arbitrator, you can't breach that covenant by acting in good faith, which is the uncontradicted testimony. This arbitrator had a subjective feeling that he wanted a certain result. That result was not dictated by the contract itself, it was dictated by his notions. And that's why we review, that's why the district court, that's why this court reviews the entire arbitration record so that, as the highest court in Nevada said, you do not become an agent of substantial injustice. I see my time is up, and I appreciate it. Thank you very much. Thank you, Counsel. I'll be very brief. I think Mr. Raley's argument demonstrates that the Raley's disagrees with how the arbitrator applied Nevada laws, implied covenant of good faith and fair dealing. And on the factual issues, I won't go into it, but the testimony of United Coins officer, the — it's an incorrect statement of it, and the arbitrator rejected that interpretation and found that there was not good faith renegotiation. And that's — Did the officer testify that it was? All the negotiations were conducted by Raley were in good faith? No, Your Honor. In fact, the testimony that Raley's has cited for that proposition refers to the settlement negotiations that took place after the arbitration had been filed, not the earlier negotiations during the period during which the arbitrator found that there was a breach of the covenant of good faith and fair dealing. And that's why the arbitrator rejected this very argument as a matter of fact, and that is a finding that is unreviewable under the Federal Arbitration Act and Nevada law. And I will leave it at that unless the Court has any other questions. Thank you. Thank you, Counsel. Thank you both very much. The case just argued will be submitted. The next
judges: Reinhardt, Paez, Tallman